So, first case for this morning is the Elmwood County Treasurers' Association v. Hamer And for the appellate, Mr. Scherer and Mr. Herman, the appellant is Mr. Schmidt. You may proceed. Good morning, your honors, counsel. My name is David Herman and I represent the appellant in this case, the Elmwood Treasurer's Association. We are here today seeking the court to require the state public officials to follow not only the Elmwood state statutes, but the Elmwood Constitution. The state did not pay the treasurers their statutorily and constitutionally mandated stipend in either fiscal year 2010 or 2011. The state argues that because of fiscal constraints, that they are not required to follow the constitution or the state statute, and that this court has no judicial oversight of those actions. We are here today because of the Supreme Court's grievances. The treasurers stand before the court this morning seeking reversal of the Supreme Court's opinions, and the order denying its motion for summary judgment and granting distinct motions based on separate opinions. I'm sorry, I'll move on to that section. I don't know if that's possible, sir. Article 7, section 9B of the Elmwood state constitution says that the stipend, that the salary for the state county treasurers cannot be changed during their term of office. The Elmwood county code says that they get paid a stipend of $6,500 annually. In Harlan v. Sweet, the Elmwood Supreme Court said that this stipend constitutes part of their salary, and that section 9 of article 7 controls. And in that case, the Supreme Court said that the treasurers couldn't benefit by being paid the stipend because they were already on their term of office, so they had to wait until they were reelected. However, despite the Supreme Court… In your reference to Harlan v. Sweet, that would matter two days, correct? That's correct, Your Honor. That's correct. My client's numbers got, I think, December 1st, and the statute was enacted December 3rd, so we're talking two days. The Supreme Court said it's either in or you're out, and by two days you're out, so you don't get it, you have to wait four years until you're reelected. And in that case, y'all say it's salary, and it's controlled by this section of the Constitution. Despite that, they weren't paid that. And who made the decision was the director, Brian Hamer, of the Elmwood Department of Revenue, and the councilor, who didn't cut the right amounts or the warrants. Now the trial court, we believe, erred in ruling in favor of the state. We believe my client's position is supported by not only the plain wording of the Elmwood Constitution. We believe it's supported by the Supreme Court decision, Hamer v. Sweet, and Jorgensen v. Milojevic. We also believe the Fourth District's own ruling in the case of Russell v. Milojevic support my client's position. And all of these authorities support reversal of the Supreme Court decision. Counsel, let me ask you a question. You referred to Jorgensen, and your opponent indicates that the primary or one of the primary basis for the ruling in Jorgensen was the court's administrative power over the court. Does that mean that you lose? No, Your Honor. The Supreme Court in Jorgensen first starts off on the rational basis of why the Constitution has an anti-diminishment clause for the judiciary. The first part of that decision, if you read it, says that's why this is in the Constitution. And as to appropriations, not only does the Jorgensen case say it is the administrative powers. The Jorgensen case says that the Elmwood Constitution places judicial powers of the government in the court. This judicial power includes all powers necessary for the complete performance of judicial functions. Among those judicial functions is not only the power to administer the court system. It's also the power of the judiciary to construe the Constitution and determine whether its provisions have been disregarded by any other branch of the government. And it says it is the duty to construe the Constitution. And it's – if the officials of the executive branch have exceeded their lawful authority, the courts have not hesitated and must not hesitate to say so. As to an appropriation, it cannot be invoked by the comptroller to defeat the judge's constitutionally protected rights. It is within the power of the judicial branch to compel the state to pay the COLAs without appropriation. And the Supreme Court in Jorgensen relied on its prior case of Hansel and also relied on Section 90C of the State Comptroller's Act, which says the comptroller can draw warrants based on obligational or expenditure authority other than by appropriation. And the court goes on to say, Your Honor, where a statute categorically commands the performance of an act, so much money as is necessary to obey that command may be dispersed without any explicit appropriation. And the court further said if that is true for a statute, it's unquestionably so with respect to actions compelled by the Illinois Constitution. And they finally said no principle of law permits us to suspend constitutionally required mandates for economic reasons, no matter how compelling those reasons are. So we believe that it's a judicial function to make sure the executive branch, who we're talking about is the comptroller, and an executive appointee, a director of a department, follow the Illinois Constitution. If we follow the circuit court's ruling here, Your Honor, basically we are giving discretion to the executive branch to determine what provisions of the Illinois Constitution are going to be enforced. The court doesn't have judicial oversight. Director Hamer doesn't pay us, even though the Constitution, by its expressed terms, in Article 7, Section 9b, says you can't do what you're doing. They say they can, and that the court doesn't have authority to remedy or change the outcome because of separation of powers and they have also argued sovereign immunity. In essence, the state wants you to believe that they can do whatever they want without any constitutional mandate or regulation or oversight by the judiciary. We just don't believe that's the law. That's why Jorgensen applies. And if you look at the case of Russell B. Bogoyevich, which the 4th District ruled, that case is unique and helps, I think, the court's interpretation of what Jorgensen was about. In Russell B. Bogoyevich, this 4th District, the 4th District Justice Myers talked about the opinion in this case. It was a state's attorney who was seeking back pay and said, we didn't get our coal as we'd like the judges, and based on Jorgensen, we should get paid. Well, the 4th District said in Russell, state's attorneys in this case don't have a constitutionally protected right. Their salaries can be diminished. There is no constitutional protection from the diminishment. In fact, that case cites the judiciary payments under the Constitution, the legislative preventions under the Constitution, the judicial under the Constitution, and it also states local elected officials, which are my clients. They say after the constitutional mandate, the court cannot compel payment of the salaries. And Russell specifically says state's attorneys don't stand in the same shoes as the judiciary or local government officials, which are my clients. So I think not only Jorgensen helps us, I think this district's own prior precedent helps us in trying to understand the reasons why the state can't unilaterally change the terms of the Constitution and its protections. Likewise, they argue that in this case, Your Honors, that this exception is somehow unique to judges. Well, I found a case, and it's called In Re, the State of Perkins, that the states, I believe it was the governor and the comptroller, they filed a brief with the 1st District Appellate Court, and in that case they argued to that appellate court, Your Honor, that there are four exceptions to a need for legislative appropriations, and one of those is based upon Jorgensen. And in that case, they did not argue at all that there was somehow some uniqueness to the judiciary in that representation to the 1st District. Counsel, I understand your position regarding the constitutional issue, but what about this dispute regarding the appropriation? What wasn't actually appropriated? You say it was, they say it wasn't. You might put some on that. Well, I think there's three different arguments there, Your Honor. The first one is our position is, under the plain terms of the appropriation statutes in 2010, there's an excess of $29 million appropriated in the Illinois Department of Revenue. And in 2011, there's an excess of $112 million. To pay my clients' numbers, their mandated constitutional stipend, it costs $663,000 each year. There's enough money there, and the reason you do that is you look at the appropriation statutes, the definitions, and the case of Harlow v. Sweet, which said, this legislation imposed additional duties on my clients, and because the state wants my clients to do additional work, we're going to pay them $6,500. And in Harlow v. Sweet, that's what treasurers argue. We have more work to do because the state told us to do more work. So if you look at the definition in the appropriation statute of operational expenses, I think in our briefs we said— Good morning. How's everybody today? Good? What a wonderful day in the Navy. I kind of like being at church this afternoon. All of that money can go to operational expenses, Your Honor. And under the definition of operational expenses are personal services. And under the definition of personal services, that includes services performed by instrumentalities of the state. So you're equating county treasurers as instrumentalities of the state? For this purpose, because that's the basis of why the state pays them the stipend. Where is the authority to report that? That is actually in Harlow v. Sweet and in the enactment of the actual stipend. I think it was—I don't have it in front of me. I think it's 1986. I can't say that specifically, Your Honor. But the state imposed certain requirements on the treasurer, and as such, they pay them a stipend to do that. Has any case ever termed a county treasurer an instrumentality of the state? No, they just said that this is their salary. Harlow v. Sweet didn't go to that, but Harlow v. Sweet's decision said, Your Honor, that this is part of their salary. And the reason that they're paid that salary is because the state imposed additional duties upon them to perform at the state's request. I don't think that next logical change in the argument is that—and therefore they are an instrumentality. What Harlow v. Sweet said was you're paid a stipend as part of your salary for additional duties imposed by the state upon you. And that's why the treasurer said we should be paid because we're doing additional duties without compensation. And they said you have to wait because you're two days into your term. County treasurer, an instrumentality of the state? I'm not familiar with that, but I know they're currently on appeal for not being paid their stipend, and I'm not familiar with their statutory requirements or the basis of the— I just don't know, Your Honor. I haven't been briefed on that. Mr. Schmidt argued that case in front of the 5th District in Wilson v. Quinn, which is the same thing for the sheriffs in the 5th District that's currently pending. He may be aware. I am not. If you want me to brief additional issues on that, I'll be glad to do that and supplement that to the court. I just don't know. In this case, Harlow v. Sweet clearly says it's salary for additional duties imposed by the state on my clients. But the essence of your argument, then, that this falls under personal services, is that the county treasurer is an instrumentality of the state. I just want to be clear on that. That is exactly for those purposes imposed by the statute, saying you have to do these additional duties, because they're doing those additional duties at the request of the state of Illinois, and that's why the state of Illinois is paying $6,500 for each treasurer for the duties imposed. And that's why state monies are going to the county level to take county treasurers as part of their salary. That is the first argument. The second argument, Your Honor, is there's enough. The state argues $3.5 million, and a lesser amount is what the appropriations should be. There's two arguments to that. That's enough to pay us. We only need $663,000 to pay us. Additionally, under the appropriations, the state can transfer funds. And we believe that the Constitution and the constitutionally mandated payment should come first. And even if they don't, the state in 2011 did use all the money in this limited pool. They left in excess of, I don't remember the number, in excess of $1 million, but they didn't pay anybody with it. They paid other expenses that weren't even constitutionally mandated. My final argument on the appropriations, even if this is all true, the Supreme Court of Jorgensen says courts can order compliance and payment of constitutionally mandated salaries. So your court order under both Antle and Jorgensen and Section 9C of the State Comptroller's Act allows the comptroller to draw warrants based on obligational or expeditory authority other than by legislative appropriation. And that's what we have here. That exception is one of four exceptions already recognized by the state, and they're breathing and integrating the state of Perkins. So if the whole appropriations argument is somehow persuasive to the court, we still have the judicial remedy to enforce the constitutional mandate. What the state argues is if there's no appropriation, you lose your constitutional protection. That's what the state argues. And the state and the Supreme Court has said, if the exigent circumstances are not enough, neither the legislature nor any executive or judicial officer may disregard the provisions of the Illinois Constitution, even in a case of great emergency. And that's quoted in Jorgensen, cited from the Illinois Supreme Court, discussing the legislative and executive branches' attempt to reduce funding based on adverse economic reasons. They say, Supreme Law of Illinois is a constitution. The executive branch shouldn't be able to rewrite it at will because of constitutional restraints. So I think Jorgensen, Antle, Levoivich, and Section 9C of the State Comptroller Act all allow this court to issue a ruling and an order compelling, under these legal theories, payment of the constitutionally mandated amounts. And that was the key distinction in Russell. The court said, after the constitutional mandate, I believe the state, in their briefs, argued on page 9 of their brief, they cite to Burris and Russell, it says, if the comptroller were to make a payment at the point of request, he would, as we saw in the case of Burris, override the action of the General Assembly without a constitutional mandate. And the constitutional mandate is key here. The executive branch shouldn't be allowed to circumvent the constitution. And this court, as part of its judicial function, should be able to say, the executive branch, you've violated the constitution, you need to pay this. The constitution clearly states they can't do what they're doing. The question is, do my client's members get the protection of the all-white constitution or can the state, without discretion or oversight of the court, change that? And their argument is they can't. And if they can't, then if that's the theory that the circuit court used, that the state is without judicial oversight, then I'm not sure what the constitution stands for if they can only say, well, we violated your constitutional rights, we didn't have the money. We believe it's part of the judicial's function to have constitutional oversight of the other two things that we make of our state government. As your judicial branch, you had both of them, and they were coalesced. So, I mean, specifically, it affected salary, but here we are actually salaried, the constitution says you can't modify it during your term, and Director Hamer and the comptroller both did. Which we believe is a clear violation of the constitution, and the question is, does the court have authority to rectify the continuing violation of my client's constitutional rights? And do my clients have the same constitutional protection that all the other people who have constitutional protections get? Because if you pick and choose as to who gets constitutional protections here, because the state can claim either sovereign unity or there was no appropriation. And we think the sounder public policy is to enforce the constitution as adopted and ratified by the people, and if it's going to be changed, the constitution has provisions, where the General Assembly has to introduce legislation, and it's got to be put out to the electorate to be voted on to change what the constitution requires. And here, that's not even a process used. It's by some appointed executive branch director of the Employment Department of Revenue who changed the constitution. And the question is, what relief can this court give to my clients to help ensure that it has the same constitutional protections as all the other people that are in the state of Illinois? We're here before you asking for you to reverse the circuit court's ruling and grant it in our favor a ruling granting the relief request, which means that we get the protection, my clients get the protection of the Illinois Constitution. The salaries of the county treasurers were impermissibly diminished in both violation of state statute and the Illinois Constitution. It is the duty of the court to construe the constitution and determine whether provisions of the Illinois Constitution have been violated by other branches of the government. It is clear here the Illinois Constitution was violated. The defendant, state actors in this case, are not above the law and should not be empowered with the unilateral ability to modify the protections granted by the Illinois Constitution. The treasurers should be provided the same constitutional protection as other members. Do you have any questions? I do have one final question here before you sit down. Your client's complaint consisted of two counts, as I recall. Count one being a request for injunctive relief and declaratory relief. Count two consisting of a claim for mandamus in addition to declaratory relief. The claim for injunctive relief, it was forecasting what the department might be doing with the 2011 stipend, I think. Looking back on it at this point, and in terms of your request at this point, is it for mandamus relief? Is it count two relief? Yes, Your Honor. I think it's clear under the law and under the case of Wilson v. Quinn that just was handed down while this case was pending from the 5th District, they even allowed the sheriff's association, the sheriffs in that case, to go back and amend your complaint and make it a mandamus. That's what you really asked for. You asked for a declaratory judgment. The 5th District sent it back down the direction to the circuit court to allow them to amend their complaint and make it a mandamus. In that case, the 5th District said the officer's suit, exception to the sovereign immunity applies here, because we have a violation of the Constitution. So under your question, yes, it would be a mandamus. We would get our relief. Any other questions? No, Your Honor. Thank you. Thank you very much, Your Honor, and may it please the court. I'm Judge, my name is Judge, and I'm an assistant attorney general for the state. And I represent the director of the Department of Revenue and the comptroller, and we ask for affirmance of the grant of summary judgment on separation of powers grounds as the circuit court held, and also on the alternative on sovereign immunity grounds if the court disagrees with our position on separation of powers. Mr. Kerman just made a very powerful presentation, I think, based on the Illinois Constitution, but it is very important that that same Constitution contains Article 8, Section 2B, which gives the General Assembly the power to make appropriations. And this court in Astley v. Netsch cited that provision of the Illinois Constitution in saying that the Constitution does not allow expenditures by state officials unless there is an appropriation for that purpose. Now, Mr. Schmidt, as I understand it, and I may be wrong, but when the legislature makes appropriations, they designate lots of money to particular areas of state government, correct? That's what they did here, yes. So they designated a pot of money to Mr. Hamer and his department, and then they designated enough money to pay what the attorney should be paid, right? But the problem is there were a number of other officials entitled to either stipends, like the Treasurer's received, or to supplemental payments of salaries, and those officials include sheriffs, coroners, supervisors of assessments, and some assessors who met appropriate criteria for the payments. There simply wasn't enough in the pot to make all of those payments. And we respectfully disagree with Mr. Herman as to these additional appropriations being eligible to cover these stipends. Section 3-1007 of the county's code specifically refers to these stipends as awards, and only for each of these fiscal years, only the $3.83 million appropriation that we mentioned in our brief was for awards, authorized payments for awards. So the department believed that that was the only money that it could use to pay these various stipends. And as we stated in our brief, we have an affidavit from a Department of Revenue official indicating it simply was not enough for either year. I believe about $5.9 million would have been needed in 2010, and roughly $6 million the following year. Your opposition to plaintiffs indicates that instead of this being an award or grant, that instead it falls under the personal services category, claiming that the county treasurer's or instrumentalities of the state, which are already there. We would disagree with that, but we think the legislature, we think even if they are considered instrumentalities of the state, the legislature made clear its intent in Section 3-1007 that these should be considered awards, and again made its intent in the appropriation by only allowing the $3.8 million stipend to be used for awards. That's the only one that mentions awards. So we respectfully disagree on that. I would also point out, though, even if he's right, and again we disagree, the money's gone, the appropriations for both years have elapsed, and the statutory lapse provision is 30 ILCS 105-25. So a supplemental appropriation would still be necessary to make these payments, and it hasn't been made. It's simply the department and the comptroller believe that they simply did not have the authority under Illinois law to make the full payments. What was done was everybody who was entitled to the payments got a share, but not everything to which they were entitled. I believe the percentage was 64.55% for 2010, and for 2011 it was 40%. And I want to be open with the court. In 2010, the department did not use any of that money for operational expenses. It did use about $1.3 million of it for operational expenses in 2011. These appropriations were unusual, Your Honors. In previous years, the General Assembly had made line-item appropriations for each of these stipends. And I believe, at least for 2011, the House did do that when it passed its appropriation measure, and the Staley affidavit of the department official that I referred to says that. And that appropriation by the House would not have been nearly enough. It would have been 40% of what the treasurers were entitled to, and that's what, in fact, they received in 2011. So we believe, under the Ask Me Versus Nets decision, and also under other decisions we've cited, the Burris case, the Donilon case from the Illinois Supreme Court, none of which was overturned by Jorgensen versus Bogoyevich, that the authority did not exist either in the executive branch or we respectfully submit that because of the language of Section 8, or particularly, rather, Section 2B of the Constitution. The judiciary does not have the authority to, in effect, order the appropriation of funds, but the case of the Jorgensen case is an exception to that. Counsel, let me ask you this. The other cases that you've cited, did they involve parties that had the constitutional protection that counsel argues the treasurers had? They did not, Your Honor. Is that significant? It is, and that's what makes this case unique, and I think it hit what happens if it hits the constitutional provision protecting them against the constitutional provision that says that it's the General Assembly that makes appropriations. So we do have an appropriation that was made, correct? There was an appropriation that was made, but as of now, that money, as I pointed out, that money is spent, and also we believe that appropriation was insufficient, and that's why the treasurers and other officials only received a portion of the amounts that they were entitled to. We believe that the Jorgensen exception should be construed narrowly. The Supreme Court went out of its way in that case to discuss the unique nature of the judiciary, and it referred to its unique vulnerability to other branches of government. This is a situation where, as the Supreme Court said, the judiciary really is dependent on the other branches of government for its financing and really, to some extent, for its ability to function, and the court discussed concerns that existed both when the U.S. Constitution was framed and that exist in this state, that an unpopular decision from the courts could result in retaliation from the General Assembly, and that's why the court felt it would present a separation of powers problem to not order the COLAs to be paid, but it distinguished Burris, and it did not overrule the Burris holding on the general rule that it's the General Assembly's sole authority to make appropriations. And the Supreme Court also did explicitly cite constitutional authority for the order that it entered in that case, which was an order to the Comptroller to pay off, essentially, pay these past due COLAs, or pay these COLAs from about 2003 or 2004, and that authority was founded in the provisions of the Illinois Constitution, including Article I, Section 16, which gives the Supreme Court administrative authority over the Illinois courts, and the Supreme Court said that includes the authority to order payment of salaries, but we do not believe the authority to administer Illinois courts would provide authorization for an order to pay the county treasurers. So we do not believe that the authority exists in this case to enter the type of order that was entered in Jorgensen. And additionally, even if the court would disagree with us on separation of powers grounds, we do believe that sovereign immunity would dictate that this case be presented in the court of claims and that certain courts would lack jurisdiction, and the reason for that is the statement, let me interrupt you just for a moment, you can go back to the sovereign immunity argument, but as to the separation of powers argument, I want to ask you about what constitutes an insufficient appropriation by the General Assembly. Here it's argued, I think you can read through it, that the required appropriations for the department would be $5,934,000, is that for 2010? Yes, that's right. And let's say the General Assembly appropriated $5,933,000. Would you be able to make this same argument that the appropriation was insufficient and therefore the department would have the ability to withhold these items? We would, I think, have to justify withholding a very small amount of them, a much smaller amount of them would help here. I think if it had been that small an amount would have helped, they probably wouldn't have been pennies short of receiving, or a few cents short of receiving their normal stipends, but here, instead of a few pennies, they received, I believe it was 64.55%, and then 40% the following year. Should we be looking at the amount actually appropriated here and making a determination as to the sufficiency of the appropriation? I don't think you need to because of what I said before, money has lapsed now. So if the money's not there, there would need to be another appropriation to pay these amounts, and that would be up to the General Assembly to do. It was spent in line with what the department was authorized to do in that particular appropriation measure. As I said before, we do believe that sovereign immunity applies. This is a case where, in essence, the treasurers seek a money judgment from the state for a past-due liability. And their argument is that they can do that because they are alleging that there was a violation of the law in not paying them. But cases which have dealt with this issue, where there are allegations of a violation of law, have said that what courts can do in that situation is say, state in the future, or state officials in the future, you must conform your conduct to the requirements of the law. And even if that has a financial impact, what courts can't do is say, state, you must pay past-due liabilities incurred because of your unlawful conduct. That portion would need to go to the Court of Claims. We understand that in Wilson v. Quinn, the Fifth District disagreed with us, but we believe that that decision was not correct. And again, the courts can order prospective relief in this situation, but not retrospective relief for liabilities that have already been incurred. And I would point out in that context, we cited Section 8A of the Court of Claims Act in our brief. And that says, that gives the Court of Claims exclusive jurisdiction over claims that are based upon a law of the state, which is what that is. So if the county treasurers were right that merely violating a statute would take the case out of the Court of Claims, Section 8A is rendered meaningless. So we believe that cyber immunity does apply here. And I think the Wilson courts seem to be setting up a law correctly, and their statements of the law were generally correct, but then they seem to do a U-turn and then say, but in that case, they said the governor loses. You can mandamus the governor. And again, we respectfully disagree with that, and think if this court finds it necessary to reach the issue, it should reach the opposite result. And I would wrap up by asking the court to affirm the granted summary judgment on separation of powers grounds, or the alternative to reach our sovereign immunity argument, and conclude that any claim would have to be brought to the Court of Claims. And I'll thank the court for its time, if there are no further questions. Thank you very much. Yes, Your Honor. Your Honors, procedurally, the circuit court granted summary judgment on the Fourth Affirmative Defense. So presumably, the court had to reach first that there was some type of constitutional violation to see the applicability of the affirmative defense in which the summary judgment was granted. In this case, Mr. Smith admitted that the department chose whose constitutional rights they were going to protect, or what portions of the Constitution they were going to enforce. He said they had the discretion, because of what they termed as a legislative mandate, to pay a certain portion to these individuals. We say there is no legislative mandate. They were among some appropriations. They weren't line-item in the past. They were line-item appropriations. These were lump-sum. And he quoted to a lot of appropriations submitted by the House, I believe, but they were never enacted. That's not what was enacted. There is no legislative mandate by some type of appropriation here. These were lump-sum buckets of money given to the department. And I think the quotes on some of the legislative stuff is that it was so the department could determine what to pay. They gave discretion to the department to determine what to pay, and that's the problem here. The department can decide whose constitutional rights are we going to do infringement on here, who's going to get constitutional protection, who's not. In fact, they were going to admit in 2011 they didn't even pay all the constitutionally mandated amounts from that bucket of money. They paid $1.3 million to other non-constitutionally mandated issues. We don't think that he said his clients, he didn't think his clients had authority, that they didn't believe they had authority to pay us. Wunder Jorgensen, ample, and that's a pre-court precedent, and a case of Roscoe Peoples Boylage that was heard before this court itself, the court district, the court can order it. In fact, we go back to the state and Perkins. Let me get that case, I apologize. They briefed the first district appellate court in the state of Perkins that there are four exceptions to the need for legislative appropriation, and they list them, all with precedent and all with authority. I think that's in my reply brief. The state itself has already recognized four exceptions to the need for legislative appropriations, which they argued today before this panel, that it's a mandatory and there's no exceptions, and because of that, it's a separation of powers. But they surely have argued in that in the state of Perkins that there's four exceptions, and they're narrow. There's no doubt about that, but one of them they assert in their briefs to that court was when there's a constitutional mandate. That's what we have here, a constitutional mandate. As to sovereign immunity, I think Wilson v. Quinn discusses this at length. We've argued the whole time that this is an officer-suit exception to the application of sovereign immunity. He generally makes the propositions why sovereign immunity applies. However, there is an exception to that. It's called the officer-suit exception, which the Wilson v. Quinn court said was applicable here. It's based on the presumption that the state will not violate the Constitution, that the state won't violate the state laws, and that if a violation occurred, it must have been committed at the sole discretion of the state official and not the state itself. So where a state official violates the Illinois Constitution or statutes, which we allege have them here, or acts of excess of his authority, modifies the constitutional protections afforded by a client, the courts have found that the plaintiff's right to be free from the consequences of the state official's actions outweigh the state's interest in controlling its own purse strings and being free from interference with its government function. We've made the allegations here. I think it's clear from the facts. Additionally, if you look to the Jorgensen case in the Supreme Court, and I haven't read it for this purpose, but when he was arguing sovereign immunity, I thought to myself, when you did Jorgensen in the Supreme Court, the court can only see a spontaneous look at jurisdiction. And when the Supreme Court wrote Jorgensen that although it impacts us, we have to hear this case, even though it is our own salary that we are ruling on, we are the Supreme Court. We have to hear this case. They didn't say, oh, it needs to go to the court of claims. They said, we have to hear it. We're the only remedy in town. If we don't hear it, then these constitutional protections will go un-remedied. So the court in Jorgensen, the Supreme Court said they were it, so they heard it. They didn't transfer it down to the court of claims. They heard it, and they issued a ruling on it saying that they could compel payment when the Constitutional mandated it. Do you have any questions, John? Thank you very much. Thank you. We'll take this matter under revisal and stand in recess for just a couple, three minutes, and let the next case get settled up here, and then we'll take care of that one.